CASE No. 1147.

MANER v. WILSON.

1. Whether a decree recommitting a report is intermediate and can be reviewed after a further decree upon the second report is not involved here, inasmuch as the first decree was filed in vacation and no written notice of its filing was ever served upon these appellants.

2. A mortgage stipulated for the payment of a sum of money, "with interest at nineteen *per cent.*, payable November 1st, next." *Held*, that after November 1st, the debt bore interest at seven *per cent.*, even though the debtor may have afterwards admitted his liability to pay the greater rate, or even promised to pay it.

3. Under the act of 1866, (13 *Stat.* 318; *Gen. Stat.* ch. LV. ¿ 5,) to continue the higher rate after the obligation fell due, it was necessary that an agreement to that effect should appear in the *original contract* and *in writing*.

4. A judgment bears interest at seven *per cent. per annum*, and no more can be collected by an assignee, the evidence showing an assignment and not an advance of money at a stipulated rate of interest to pay it off.

5. A decree decided the principles upon which an accounting should be had and referred the case back for a statement of accounts and for further testimony upon certain specified matters. At reference held for such purposes, proof was offered of a note and tax receipt not discovered nor produced before that time. *Held*, that the proof should have been received—the business being still under consideration and unfinished, equity will not allow any newly-discovered matter of importance to be excluded for no other reason than that it was not brought forward in the first instance.

6. Under the circumstances of this case, items of the account disallowed by referee and allowed by the Circuit judge, were referred back for further testimony.

7. Parties taking wrongful possession of lands of another are liable to account for the rental value and not simply for the rents and profits received. But the latter may sometimes be the true measure of the former.

8. In a conflict between referee and Circuit judge on a question of fact in a case in chancery, the latter is *prima facie* right, and where, after several estimates have been put upon the rental value of lands, the Circuit judge reached a conclusion not unsupported by evidence, this court affirmed his decree.

9. Where property is sold under execution, the proper credit to be entered upon the amount due is the net proceeds of the sale after payment of costs and expenses.

---

Before Wallace, J., Hampton, March, 1881.

Action by Samuel P. Maner and others, devisees of James W. Lawton, deceased, against B. J. Wilson and U. B. Wilkinson, commenced in April, 1879. The opinion states the case.

*Mr. Jeff. Warren*, for appellants.

*Mr. Robt. Aldrich*, contra.

March 1st, 1882. The opinion of the court was delivered by

McGowan, A. J. James W. Lawton died March 8th, 1870, in possession of a tract of land, consisting of 1,250 acres in

Hampton county, and other property necessary for the cultivation of such a plantation, viz., horses, mules, oxen, stock, cotton, plantation tools, guano, &c. He left a will by which, after several minor legacies, he devised and bequeathed all his property to Mrs. Mary Ann Maner for life, and after her death to her children. Mrs. Maner is now dead, and her children are the plaintiffs claiming the property.

Shortly before his death (April 3d, 1868,) the testator, being indebted to Wilkinson & Wilson, factors, of Savannah, Georgia, for supplies to run his farm, executed to them a mortgage and lien, which provided as follows: "In consideration of advances made to me by Wilkinson & Wilson, to the sum of $2,500, with interest at nineteen per cent., payable November 1st, next, said advances having been made to assist me in my planting operations during the year 1868, I do hereby declare and create a lien or mortgage to the said Wilkinson & Wilson on all that plantation containing 1,250 acres, and on all crops to be cultivated on said place this year, also on eight mules, six cows and calves, two yoke oxen, forty sheep, three wagons, &c., to secure the said payment. And I do hereby constitute said firm my agents to sell and make titles to said place and crops and all other property herein mentioned, repaying themselves for the advances, with interest, fees and expenses incurred," &c.

On April 16th, 1869, the testator also executed to the defendants, Wilkinson & Wilson, *a deed in fee* of the same property, real and personal, "in consideration of eight thousand dollars paid by said firm to him." Lawton remained in possession of the property until his death in 1870, when Wilkinson & Wilson took possession of all the property, real and personal, covered by the deed of April 16th, 1869, and, in addition, four tons of guano found on the place. In April, 1870, the defendants had sold personal property on the place to the amount of $850, under a judgment and execution against James W. Lawton, which they had purchased and assigned to them April 22d, 1869, by one R. R. Turner. The said defendants also rented the plantation as their own property for about *nine years* from the death of testator in 1870.

In 1879 the plaintiffs, as remaindermen under the will of James

　　　　Maner *v.* Wilson.

W. Lawton, instituted these proceedings against the defendants to have the paper executed *as a deed* bearing date April 16th, 1869, declared to be a mortgage, and to ascertain the true amount due by the testator Lawton to the defendants, and to have the land reconveyed to them and an account taken of the rents and profits thereof while in possession of defendants under their claim as owners. The defendants answered, claiming the land under their deed. Judge Fraser first heard the case and filed his decree December 19th, 1879, holding that the said deed should *stand as a mortgage,* and ordering that the clerk of the court, W. J. Causey, Esq., as referee, should take an account of the amount due to the defendants by James W. Lawton at the time of his death—the defendants to be actors in the accounting—the personal property taken and the rents of the land to be set down as credits, making all proper allowance for interest and taxes. From this decree there was no appeal.

The referee took the testimony and made his report, and it will only be necessary to refer to two or three of the points made. The defendants were allowed to the extent of $800 and interest at seven per cent. upon their account current for advances, which had been rendered to Lawton, November 24th, 1869, and also the balance of the judgment, $2,012.61, against J. W. Lawton, which they had purchased and had assigned to them at the rate of seven per cent. interest per annum. And these demands were to be credited with the rental value of the land for *nine years,* $8,500, and interest on each year's rent from the end of that year, and the value of personal property sold under execution, $850 and interest thereon, and the value of four tons of guano found on the place at $80 per ton and interest thereon.

To this report both parties filed exceptions. The plaintiffs claiming that the referee should have held the account stated for advances barred by the Statute of Limitations, or, if not, that no interest should have been allowed thereon, and, also, that too little was allowed for the rents, which should have been at least $1,200 per annum. The defendants excepted because the referee had not allowed the *whole account stated,* $1,690.61 and interest, on the account, as well as the assigned judgment *at the rate of nineteen per cent. per annum* for the whole time until paid, and,

also, because the referee charged " rental value," when he should have found " that the defendants were only chargeable with the amounts actually received from the annual rents."

The case upon the exceptions came on to be heard before Judge Pressley, who filed his decree July 28th, 1880, overruling the Statute of Limitations and sustaining the referee in charging rental value instead of rents and profits received for the land; but holding that the whole of the account stated for advances, $1,690.61, should have been allowed the defendants, and that both this account and the assigned judgment *should bear interest at the rate of nineteen per cent. per annum.* The judge recommitted the case to the referee to take further testimony and restate the accounts between the parties according to the principles above decided. " Either party is free to offer testimony as to the value of the annual rents, or the guano, personalty, property shipped to Savannah or sold by the sheriff," &c.

The referee took further testimony and again stated the accounts. · Upon this accounting the defendants offered *a new item* of indebtedness against J. W. Lawton, which had not appeared before, viz., a sealed note, as follows :

" $1,200. On or before the first of November next I promise to pay Wilkinson & Wilson or order twelve hundred dollars for plantation supplies to assist me in my planting operations the present year. In consideration of which supplies furnished me by Wilkinson & Wilson I obligate and bind myself to consign to them my cotton crop of three hundred and fifty acres production to sell and repay themselves for all advances and customary charges, &c.

"J. W. LAWTON. [L. S.]

"June 5th, 1867."

Also tax receipt for 1869, $101.06.

The referee made his report restating the old items of account according to the principles of Judge Pressley's decree, but refusing to allow the defendants the aforesaid note for $1,200, and the tax receipt, on the ground that they were *new matter*, and not within the terms of Judge Pressley's order of reference. Both parties again excepted, and Judge Wallace overruled the report in so far as it excluded the note for $1,200 and the tax receipt

for $101.06, and allowed a credit of the gross amount of sheriff's sales, $850, instead of the net balance of $678.85. The judgment also modified the report by reducing the rental value of the land to the amount of rents actually received, and again ordered the report to be recommitted to the referee.

The plaintiffs appeal to this court from the decree of Judge Pressley upon the following grounds:

1. " Because his Honor erred in allowing interest at nineteen per cent. on the account current of $1,691.61 and the judgment of $2,012.61, and overruling referee's report that interest on same be fixed at seven per cent.

2. " Because his Honor erred in overruling the referee's report rejecting as inadmissible a copy of a letter said to have been written by defendants to Lawton in his life-time, and witnesses' statement, after Lawton's death, as to what Lawton said or agreed to verbally in reply about terms of said letter.

3. " Because his Honor erred in not sustaining the referee's report that $800 was only due by Lawton on the account current at time of his death."

The plaintiffs also appeal from Judge Wallace's decree upon the following grounds:

1. " Because he erred in not sustaining plaintiff's exception to the report of referee, that the rental value of the land was worth $1,200 annually, and in allowing only ten bales of cotton annually as rent, Judges Fraser and Pressley having decided that the defendants had taken possession of the land unlawfully and were to be charged with such rents as the land could have brought on fair competition in open market.

2. " Because, at any rate, his Honor erred in overruling the referee's report that the rental value of the land was $1,200 per annum.

3. " Because his Honor erred in overruling the referee's report which was adverse to the allowance of the tax receipt of 1869 for $101.06 and the note for $1,200—the same not being authorized by Judge Pressley's decree.

4. " Because his Honor erred in overruling the referee's report allowing $850 worth of personalty sold under execution, as well as $407.61 worth of guano.

5. "Because their Honors', Judge Pressley's and Judge Wallace's, decrees were otherwise contrary to law and the preponderance of the evidence."

In the first place objection is made that it is too late to appeal from the decree of Judge Pressley, which, as respondents claim, was not "an intermediate decree necessarily affecting the judgment not before appealed from," but a final judgment, which cannot be reviewed upon appeal from Judge Wallace's decree. Judge Pressley's decree, after declaring the principles which should govern in the accounting, recommitted the whole matter to the referee to state the account, and at least to that extent was an intermediate order; but without going into the question whether Judge Pressley's decree can be reviewed on appeal from Judge Wallace's decree, it is enough to say that, as admitted, the decree of Judge Pressley was filed in vacation and no written notice of it was served on appellants. The object of the notice required is to apprise the appellant that the respondent intends to insist on an appeal *within the time fixed by law,* and unless such notice is given the appellant is unrestricted as it regards the time within which an appeal may be taken. "The time for giving notice of appeal from a judgment filed in vacation begins to run from the receipt of written notice of the judgment, notwithstanding actual notice." *Lake* v. *Moore,* 12 *S. C.* 563.

In regard to the exceptions, we will, for the sake of clearness, consider them according to subject matter.

*First, as to the claims of defendants:*

I. It seems that an account current from Wilson & Co. to J. W. Lawton was in evidence, and it is to be regretted that it is not in "the case" as presented here. In regard to that account nothing appears but a mere statement that it bears upon its face, "A balance of $925 on January 12th, 1869, and also items of merchandise and cash furnished to Lawton during the months of April, May, June, July, August, September, October and November, aggregating $2,730.61, reduced by credit to the amount of $1.690.61 due Wilson, November 24th, 1869." In the first report, under Judge Fraser's decree, the referee allowed of this balance only $800 and interest on it at *seven per cent.* Judge Pressley decreed that the defendants were entitled to the whole

balance of the account as rendered, $1,690.61, with interest thereon, until paid, at the rate of *nineteen per cent. per annum.* In the second report this amount and interest as decreed by Judge Pressley were retained.

We have not the means of determining whether that balance was correct or not, except in so far as interest at *nineteen per cent. after November 1st,* 1868, entered into it. We cannot agree that any balance of the account which remained unpaid should bear more than *seven per cent. interest after November 1st,* 1868. At the time the lien or crop mortgage for advances was executed, April 3d, 1868, the law of 1866 was of force, which provided as follows: "In all cases of contract for the hiring, lending or use of money, wherein, by the terms of the original contract, no specific rate of interest shall have been agreed upon in writing, signed by the party to be charged therewith, the legal interest shall be and remain at the rate of seven per cent. per annum." 13 *Stat.* 318.

In this case there was a contract wherein a specific rate of interest was agreed upon in writing, signed by the party to be charged therewith, but that contract was in these words: "*with interest at nineteen per cent. payable first November next*" (1868). That contract carried the interest at *nineteen per cent.* until the advances were due and payable on November 1st, 1868, and no longer. This court has held "that if the debt bears a fixed rate of interest on its face *higher* or *lower* than that provided by law, the interest fixed by law attaches on it, for the detention of the principal sum *after the debt becomes due,* where the parties do not contract that it shall be the rate after that time." *Langston* v. *S. C. Railroad Company,* 2 *S. C.* 248. In several subsequent cases it has been held that it is always a *question of intention,* to be derived from the terms of the obligation itself, whether the party agreed that the specified interest should continue to run after it fell due. *Sharpe* v. *Lee,* 14 *S. C.* 341; *Mobley* v. *Davega, ante p.* 73.

The only paper in this case signed by the party to be charged, which mentions *nineteen per cent. interest,* is the lien or mortgage of April 3d, 1868, due November 1st, 1868; and there is nothing in that paper which authorizes the construction that Lawton's

promise to pay *nineteen per cent.* on advances, *"payable first November next,"* was *intended to reach beyond the time the money fell due.* We do not see how it can alter the result if the account for advances, with interest calculated at nineteen per cent., was rendered to Lawton in his life-time; and there was no evidence that he objected to it, or even if it were shown that he verbally promised that the interest should continue to run at *nineteen per cent.* on the balance after it became due and payable, in order to continue *that interest* after the obligation fell due it seems that two things were necessary; *first,* that it should appear to be the agreement of the parties that the interest should so run, and, *second,* that such agreement should appear *in writing in the original contract.* No such agreement appears in the contract, and, as a consequence, the balance of the account for advances will bear interest at the rate of *seven per cent. from and after November 1st,* 1868.

II. In reference to the balance of the judgment of *E. C. Wade & Co.* v. *James W. Lawton,* $2,012.61, which was assigned to defendants April 22d, 1869, the interest should be allowed at the rate of *seven per cent.* It nowhere appears *how much* was paid for the judgment. There is no charge for *the money,* as such, advanced for the judgment, which was not "taken up," but assigned and kept in force as a judgment, and, as we understand it, certain personal property of Lawton, after his death, was actually levied and sold under it. A judgment at law bears interest at the rate of *seven per cent.* per annum. *Gen. Stat.* 318.

We can find no evidence in the case that Lawton ever agreed in writing to pay *nineteen per cent.* interest for any advances except for agricultural purposes. The money with which the execution was purchased was not advanced for agricultural purposes, and we cannot infer such a contract, as to the judgment, from the mere fact that he promised that interest for advances to make crops. We do not think that the money with which the judgment was purchased "stands on equal footing with the advances in the account current." So far as the interest on the judgment is concerned, the decree of the Circuit Court is reversed, and the interest on the judgment will be calculated at *seven per cent.* according to law.

III. The claim for the $1,200 agricultural note was not made until the last reference under Judge Pressley's decree, which authorized the referee "to take further testimony and state the account between the parties according to the principles therein announced," either party being free to offer testimony as to the value of the annual rents, or the guano, personalty, property shipped to Savannah or sold by the sheriff, &c. Under this order the referee held that he could take testimony *only* on the points specially indicated, and refused to consider the *new matter* —the note and tax receipt—then presented for the first time.

Judge Wallace overruled the report upon this subject, and ordered the note and tax receipt to be allowed. The ground upon which the referee excluded these matters was not sufficient. The order was to ascertain the debt of the defendants against Lawton at the time of his death. The business being still under consideration and unfinished, equity will not allow any newly-discovered matter of importance to be excluded for no other reason than that it was not brought forward in the first instance.

As was said in the case of *Gist* v. *Gist, Bail. Eq.* 343: "In strictness this claim comes too late; it ought to have been made before the master on the reference. This was not done, and there was neither any exception to his report on that ground, nor was the point made at the hearing in the court below. Still, however, I suppose it to be within the competency of this court, if any claim or ground of defense has been casually omitted to be made, to afford the parties an opportunity of trying its merits, and the court is always reluctant whilst the case is in its power to exclude any apparently just claim or defense."

There seems to be no doubt about the tax receipt for 1869, which was before the defendants took possession of the land, and if it was not included in the account stated, should be allowed.

But, as to the note, it seems strange that in such a controversy the defendants should have entirely overlooked an item of debt for $1,200, or so far miscalculated the amount of their claim, when Mr. Wilson said in his testimony "that Lawton owed them $900, in January, 1869." The note bears date June 5th, 1867, and is in the nature of a lien for agricultural advances. Its terms show that it was given, not to be collected as an ordi-

nary money demand, but to cover plantation supplies for 1867, as the lien for $2,500 was given for the year 1868, "in consideration of which supplies Lawton bound himself to consign to them his cotton crop of *three hundred and fifty acres production* to sell and repay themselves for all advances and customary charges," &c. There is no proof as to what extent supplies were furnished Lawton in 1867, nor how much, if any, of his cotton crop of that year went in payment. The defendants did not claim the lien for $2,500 in 1868, but rendered a formal account current for supplies down to November, 1869, which included charges anterior to that time. Unexplained, the presumption would be that this account included balance for all advances previously made. It is not to be supposed that the defendants would render a formal account for supplies, omitting those made in 1867 to the extent of $1,200, and, accordingly, Mr. Wilson states in his testimony that "when we made up account current we put in all appearing on the books."

It may be that the itemized account rendered will show the truth of the matter. If it turns out that supplies were furnished in 1867 to the amount of this lien note, and they have never been paid for or included in the account stated, the claim should be allowed. But we think the note should be referred back to the referee to ascertain all the facts connected with it: why the delay in producing it, and especially whether the supplies covered by it were furnished in 1867, and if so, whether they were included in the account rendered, or have been paid for in whole or in part by cotton or otherwise; and it is so ordered.

*Second, as to the claims against defendants:*

I. In reference to the rents of the land. The defendants took possession of the plantation May 4th, 1870, and held it and rented it until January 1st, 1879, as owners under a paper, in form a deed, but which has been declared to be a mortgage. It is conceded that the land did not belong to the defendants, and they must account for rents, but the contest is as to what amount they shall be required to pay. The plaintiffs contend that the defendants are chargeable with such rent as they could have received if they had offered the plantation for rent on fair competition in open market; and the defendants insist that they

are only liable for the actual rents and profits received while they had possession. Judge Pressley held that the view of the plaintiffs was the correct one—that the defendants should account for " the rental value "—for the reason that they took possession without due process of law, and had no right to cause loss to the estate of Lawton by their unsuccessful planting experiment, and so he construed Judge Fraser's decree. We concur in this view. The occupancy of the defendants certainly bears no analogy, as was contended, to that of a tenant in common, as against his co-tenant, who is in possession of his part as of right. " One tenant in common cannot maintain a possessory action against his co-tenant except for an actual ouster; but if he ousts the other co-tenants, and keeps them out by force, then he would be liable as *a trespasser for the rental value*," &c. *Jones* v. *Massey,* 14 *S. C.* 307.

The defendants entered and held as absolute owners. It is true that they had a conveyance of the land, in form a deed, but as a deed it has been held to be invalid. They knew it was intended to be a mortgage, and as they did not enter and hold as mortgagees they are not entitled to be considered as mortgagees rightfully in possession.

Under this judgment the referee restated the accounts. There was proof as to the amount of rents actually received, and conflicting testimony as to the rental value of the land, and he found the rental value to be $1,200 per annum.

Judge Wallace, while concurring in the principle upon which the rents were charged, held as matter of fact that the rents actually received were substantially the same as those the plantation would have brought " on fair competition and in open market." He says: " That in fixing the rent of the land the proof of the plaintiffs and the finding of the referee tend more to show what the plantation was worth, in the opinion of the witnesses, than what it would have brought during the time defendants had it in possession. The proof is that it brought ten bales of cotton, weighing five hundred pounds each, and the taxes for each year defendants had it in possession, except the last year, when it brought nine bales and the taxes. There is no proof that there was either carelessness, negligence or thriftless-

ness in the renting of the land, or that there was any desire or intention of defendants to benefit the party to whom they rented it by allowing him to have it at an under value; on the contrary, it is proved that after the plaintiffs came into the possession of the place they rented it to the same party for the same rent— nine bales of cotton and the taxes. My conclusion is that *the rents which could have been received,* had the place been offered on fair competition, in open market, are ten bales of cotton and the taxes for each year the defendants had it in possession, except the last, and for that year the rent should be nine bales and the taxes." Shall this ruling of the Circuit judge, modifying the finding of the referee upon a question of fact, stand as the judgment of this court?

Being a case in chancery, we have the right to consider all the testimony, which we have done. There is conflict in the testimony, and in that case the judgment of the Circuit judge is at least *prima facie* right. There are several considerations which induce us to concur with him. The opinion of witnesses as to what land would rent for is necessarily somewhat speculative. The question of what land would rent for in the market is not always identical with that of its worth. During at least part of the time this land was in possession of the defendants the government was somewhat unsettled and labor more or less demoralized. The defendants did not occupy the land themselves, but rented it to others. They claimed to be the owners, and it was their interest to get full rent. This is the third estimate that has been made of their rents. It concerns the interest of the country that there should be an end of litigation. Whilst, as an original question, we might possibly not have reached the same conclusion which the Circuit judge did, we cannot say his ruling as to the amount of rents was error, and the same is affirmed.

II. The sheriff, under the execution assigned to defendants, sold personal property on the place to the amount of $850, of which $171.15 was applied to costs and expenses, leaving a net balance of $678.85, which amount, and not the gross sales, the judge ordered to be credited on the execution. In this we concur with the judge. This exception is overruled.

2F

III. The defendants found on the place when they took possession, four tons of guano, worth $407.61, which they used. The defendants deny accountability for this, alleging that they sold the guano to Lawton in his life-time, and that it was neither paid for nor included in the account stated—that they simply cancelled the charge by taking back the guano. The referee held the defendants liable, and the Circuit judge reversed the report in that particular. This item *is* recommitted for further proof under Judge Wallace's order of reference.

Subject to the modifications herein made, it is the judgment of this court that the judgments of the Circuit Court be affirmed.

SIMPSON, C. J., and McIVER, A. J., concurred.